# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE PRESKA

----------------------------------------------------X

OPAL FINANCE LTD.,                              :

08 CIV 8279

        Plaintiff,                              :

08 CV _____

    - against -                                   :

ECF CASE

AGRENCO MADEIRA COMERCIO            :
INTERNACIONAL LDA a.k.a. AGRENCO
MADEIRA COMERCIO INTERNACIONAL    :
LTD., AGRENCO GROUP a.k.a. AGRENCO
LTD., AGRENCO S.A. and INLOGS           :
INTERNATIONAL LTD.,

                             :

        Defendants.
----------------------------------------------------X

SEP 26 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## **VERIFIED COMPLAINT**

The Plaintiff, OPAL FINANCE LTD. (hereinafter "Plaintiff" or "OPAL")

attorneys, Tisdale Law Offices, as and for its Verified Complaint against the Defendants,

AGRENCO MADEIRA COMERCIO INTERNACIONAL LDA a.k.a. AGRENCO MADEIRA

COMERCIO INTERNACIONAL LTD. (hereinafter "Agrenco"), AGRENCO GROUP a.k.a.

AGRENCO LTD. (hereinafter "Agrenco Group"), AGRENCO S.A. (hereinafter "Agrenco

S.A.") and INLOGS INTERNATIONAL LTD. (hereinafter "Inlogs")(collectively referred to as

the "Defendants") allege, upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

    2.    At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law with a place of business in Monrovia, Liberia.

    3.    Upon information and belief, at all material times, the Defendant Agrenco

Madeira was and still is an entity duly organized and existing by virtue of foreign law with a

registered address at: Avenida do Infante 50, 9004-521, Funchal, Madeira and places of business in Brazil and Switzerland c/o Agrenco S.A. at 12, Avenue des Morgines 1213 Petit Lancy Geneve, Switzerland.

4.     Upon information and belief, at all material times, the Defendant Agrenco Group a.k.a. Agrenco Ltd. was and still is an entity duly organized and existing by virtue of foreign law with an address at: Av. Juscelino Kubitschek, 1400, 7° andar, Sao Paulo, Brazil. *See Contact section of Agrenco Group website annexed hereto as Exhibit "1."*

5.     Upon information and belief, at all material times, the Defendant Agrenco S.A. was and still is an entity duly organized and existing by virtue of foreign law with an address at: 12, Avenue des Morgines 1213 Petit Lancy Geneve, Switzerland.

6.     Upon information and belief, at all material times, the Defendant Inlogs was and still is an entity duly organized and existing by virtue of foreign law with an address of: c/o Agrenco do Brasil, Rue Blumenau, 1886 Itajai, Santa Catarina, Brazil 88305-102.

7.     By a fixture note dated June 18, 2008, Plaintiff chartered the motor vessel "IRENE" (hereinafter the "Vessel") to the Defendant Agrenco Madeira as charterer for a time charter trip at the rate of $70,000.00 per day.

8.     Certain disputes arose between the parties after Defendant Agrenco Madeira failed to pay the first installment of hire as per the terms of the charter party.

9.     As a result of Defendant Agrenco Madeira's failure to pay hire, the Plaintiff was forced to withdraw the Vessel and to seek alternative employment for her.

10.     As a result, the Plaintiff has suffered damages in the principal amount of $1,123,200.00, which represents the loss of charter hire for the period the Vessel was

2

unemployed.

11.     Despite due demand, Defendant Agrenco Madeira has failed to pay the total principal sum of $1,123,200.00, exclusive of interest and costs, which is due and owing to the Plaintiff under the charter party.

12.     Pursuant to the charter party, any disputes arising thereunder shall be referred to Arbitration in London in accordance with English Law.

13.     Plaintiff has commenced arbitration against Agrenco Madeira in accordance with the charter party and appointed its arbitrator.

14.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London Arbitration proceedings conducted pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $1,123,200.00 |
| B. | Estimated interest on the principal claims at 7% for three years: | $260,215.63 |
| C. | Attorneys' fees and other recoverable costs: | $250,000.00 |
| Total: |   | **$1,633,415.60** |

## DEFENDANTS' RELATIONS

## I. AGRENCO GROUP and AGRENCO MADEIRA

15.     Upon information and belief, Agrenco Group is the alter ego of Agrenco Madeira because it dominates and disregards Agrenco Madeira's corporate form to the extent that Agrenco Group is actually carrying on Agrenco Madeira's business and operations as if same were its own.

3

16.    Upon information and belief, Defendants Agrenco Group and Agrenco Madeira are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

17.    Upon information and belief, the 'Agrenco Group' is the common name for the soft commodity trading group known in the industry as 'Agrenco' based in Brazil.

18.    Upon information and belief, the 'Agrenco Group' is controlled by Mr. Antonio Iafelice, who presents himself on the Agrenco website as the "CEO of the Group." Upon information and belief, Mr. Iafelice is or was also the chairman of the Agrenco Group Management Board.

19.    Upon information and belief, the 'Agrenco Group' presents itself as a single entity to the world and on its website as being one entity which has control over its several arms including Agrenco Madeira, Agrenco S.A. and Inlogs.

20.    Furthermore, upon information and belief, the M/V IRENE was chartered simply to 'Agrenco,' further suggesting these entities are a single economic unit with no corporate distinction between or among them. *See fixture recap annexed hereto as Exhibit "2."*

21.    Upon information and belief, Agrenco Group and Agrenco Madeira share at least one director in common, Mr. Fabio Russo, who is described as the CFO of the Agrenco Group on their website (www.agrencogroup.com) and is also listed as a director of Agrenco Madeira and the CEO of Agrenco in Italy.

22.    Upon information and belief, as further evidence of the Agrenco Group's control over the entire group of Agrenco companies and lack of corporate distinction between the Group and each of its arms, in another matter, Agrenco S.A. submitted claim submissions in an ongoing

4

London Arbitration utilizing the Agrenco Group letterhead on behalf of "Agrenco Italia S.p.A." *See copy of page 1 of Respondents' Defense annexed hereto as Exhibit "3."*

23.    Upon information and belief, Defendant Agrenco Group has no separate, independent identity from Defendant Agrenco Madeira as they are separately incorporated for the purpose of fraudulently avoiding payment of just debts to their creditors.

24.    Based on the foregoing, as well as other activities, Agrenco Group and Agrenco Madeira should be considered a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Agrenco Group susceptible to attachment and/or restraint for the debts of Agrenco.

25.    In the alternative, Defendant Agrenco Madeira is merely a shell corporation through which Agrenco Group conducts its business.

26.    Upon information and belief, Defendant Agrenco Group is an alias, or agent of Defendant Agrenco Madeira and/or Agrenco Group is an alias, or agent of Agrenco Madeira.

27.    By virtue of the foregoing, Agrenco Group is properly considered a party to the subject contract as it is the trade name, alias, alter ego and/or paying agent of Defendant Agrenco.

28.    In the further alternative, Defendants Agrenco Group and Agrenco Madeira are partners and/or are joint venturers.

29.    In the further alternative, Defendants Agrenco Group and Agrenco Madeira are affiliated companies such that the Defendant Agrenco Group is now, or will soon be, holding assets belonging to Defendant Agrenco Madeira and vice versa.

## II. AGRENCO S.A. and AGRENCO MADEIRA

5

30.    Upon information and belief, Agrenco S.A. is the alter ego of Agrenco Madeira because it dominates and disregards Agrenco Madeira's corporate form to the extent that Agrenco S.A. is actually carrying on Agrenco Madeira's business and operations as if same were its own.

31.    Upon information and belief, Defendants Agrenco S.A. and Agrenco Madeira have a common address at: 12, Avenue des morgines, 1213 Petit Lancy Geneve, Switzerland.

32.    Upon information and belief, Agrenco Madeira is operated out of Agrenco S.A.'s address in Switzerland. Specifically, the Plaintiff was provided with contact details of Agrenco Madeira, "c/o AGRENCO SA-GENEVE" at Agrenco S.A.'s Switzerland address.

33.    Upon information and belief, the 'Agrenco Group' presents itself as a single entity to the world and on its website as being one entity which has control over its several arms including Agrenco S.A. and Agrenco Madeira.

34.    Furthermore, upon information and belief, the M/V IRENE was chartered simply to 'Agrenco,' further suggesting these entities are a single economic unit with no corporate distinction between or among them. *See fixture recap annexed hereto as Exhibit "2."*

35.    Upon information and belief, Defendant Agrenco S.A. has no separate, independent identity from Defendant Agrenco Madeira as they are separately incorporated for the purpose of fraudulently avoiding payment of just debts to their creditors.

36.    Based on the foregoing, as well as other activities, Agrenco S.A. and Agrenco Madeira should be considered a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Agrenco S.A. susceptible to attachment and/or restraint for the debts of Agrenco Madeira.

6

37.    In the alternative, Defendant Agrenco Madeira is merely a shell corporation through which Agrenco S.A. conducts its business.

38.    Upon information and belief, Defendant Agrenco S.A. is an alias, or agent of Defendant Agrenco Madeira and/or Agrenco S.A. is an alias, or agent of Agrenco Madeira.

39.    By virtue of the foregoing, Agrenco S.A. is properly considered a party to the subject contract as it is the trade name, alias, and/or alter ego of Defendant Agrenco Madeira.

40.    In the further alternative, Defendants Agrenco S.A. and Agrenco Madeira are partners and/or are joint venturers.

41.    In the further alternative, Defendants Agrenco S.A. and Agrenco Madeira are affiliated companies such that the Defendant Agrenco S.A. is now, or will soon be, holding assets belonging to Defendant Agrenco Madeira and vice versa.

### III.  INLOGS and AGRENCO MADEIRA

42.    Upon information and belief, Inlogs is the alter ego of Agrenco Madeira because it dominates and disregards Agrenco Madeira's corporate form to the extent that Inlogs is actually carrying on Agrenco Madeira's business and operations as if same were its own.

43.    Upon information and belief, Defendants Inlogs and Agrenco Madeira are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

44.    Specifically, Inlogs and Agrenco Madeira have present themselves in the industry as operating out of a common address "c/o Agrenco do Brazil."

45.    Upon further information and belief, Agrenco Madeira and Inlogs share a common fax number of 55(11) 3523-1449 and a common Tlx number of: (51) 94075558 ASCL

7

G.

46.    Furthermore, upon information and belief, Agrenco Madeira and Inlogs are both subsidiaries of the Agrenco Group.

47.    Moreover, upon information and belief, Agrenco Madeira and Inlogs share Beethowen P. Nepomuceno, a person who has corresponded on behalf of Agrenco Madeira and Inlogs as primary operational correspondent with the Plaintiff on charters of ships to both Inlogs and Agrenco Madeira.

48.    Upon information and belief, Mr. Nepomuceno has also signed emails on behalf of "Agrenco Group – Inlogs Int."

49.    Upon information and belief, Defendant Inlogs has no separate, independent identity from Defendant Agrenco Madeira as they are separately incorporated for the purpose of fraudulently avoiding payment of just debts to their creditors.

50.    Upon information and belief, Defendant Inlogs acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Agrenco Madeira, and/or receive payments being made to Defendant Agrenco Madeira.

51.    Although Inlogs was not named in the charter party, Inlogs has made payments on behalf of Agrenco Madeira. *See payments made by Inlogs on behalf of Agrenco Madeira annexed hereto as Exhibit "4."*

52.    It is not common practice in the maritime industry for an independent company to pay a charterer's debt, where it is not a party to the charter party.

53.    Furthermore, upon information and belief, the fixture note between Plaintiff and Agrenco Madeira states that the charter of the Vessel is to be "OWISE FURTHER

8

TERMS/COND/CRDETS OF M.V. IRENE/INLOGS-AGRENCO CP DD 28.4.06

LOGICALLY AMENDED IN ACCORDANCE WITH ABOVE." *See Fixture Note annexed hereto as Exhibit "2."*

54.     The charter party dated April 28, 2006 referred to above is only between the Plaintiff and Inlogs, not Inlogs-Agrenco as stated by Agrenco Madeira's brokers in the fixture note between Plaintiff and Agrenco Madeira. *See first page of Charter Party dated April 28, 2006 between Opal Finance and Inlogs International Ltd. Annexed hereto as Exhibit "5."*

55.     Based on the foregoing, as well as other activities, Inlogs and Agrenco Madeira should be considered a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Inlogs susceptible to attachment and/or restraint for the debts of Agrenco Madeira.

56.     In the alternative, Defendant Agrenco Madeira is merely a shell corporation through which Inlogs conducts its business.

57.     Upon information and belief, Defendant Agrenco Madeira is an alias, or agent of Defendant Inlogs and/or Inlogs is an alias, or agent of Agrenco Madeira.

58.     By virtue of the foregoing, Inlogs is properly considered a party to the subject contract as it is the alias, alter ego and/or paying agent of Agrenco Madeira.

59.     In the further alternative, Defendants Agrenco Madeira and Inlogs are partners and/or are joint venturers.

60.     In the further alternative, Defendants Agrenco Madeira and Inlogs are affiliated companies such that the Defendant Inlogs, or will soon be, holding assets belonging to Defendant Agrenco Madeira and vice versa.

61.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA, J.P. Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank N.A. which are believed to be due and owing to the Defendants.

62.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendants held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and federal common law attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN-AMRO, American Express

10

Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA, J.P. Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank N.A. which are due and owing to the Defendants, in the amount of **$1,633,415.60** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint;

      C.     That this Court recognize and confirm any foreign judgment/award of costs on the claims had herein as a judgment of this Court;

      D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

      E.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: September 26, 2008
New York, NY

The Plaintiff,
OPAL FINANCE LTD.,

By:

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

11

## ATTORNEY VERIFICATION

State of Connecticut  )

                   )    ss: Southport

County of Fairfield  )

    1.     My name is Lauren C. Davies.

    2.     I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

    3.     I am the attorney for the Plaintiff in this action. I am fully authorized to make this Verification on its behalf.

    4.     I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

    5.     The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

    6.     The source of my knowledge is information and records furnished to me by the Plaintiff and its solicitors, all of which I believe to be true and accurate.

    7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated: September 26, 2008
      Southport, CT

                                     _Lauren C. Davies_

12

# EXHIBIT 1



GROUP

Wednesday, September 3rd 2008    Home  Login  Português

Group | Integrated Operations | Global Network | Articles | Talk to us | Investor Relations

▶ Profile

▶ Management

▶ Mission

▶ Vision

▶ History

▶ Annual Report

▶ Communication

▶ Contact

· **Contact**



To obtain more information about Agrenco Group, please be in touch with our several business areas.

Av. Juscelino Kubitschek, 1400 - 7º andar
São Paulo - SP
Brasil
Telefone: +55 (11) 3572-0100
comunicacao@agrenco.com.br

Minimum resolution of 800x600 © Copyright 2005, Agrenco Group

# EXHIBIT 2

Greystone Shipping Ltd.

# Greystone Shipping Ltd.

1ST Fl., Westbury House
23/25 Bridge Street
Pinner HA5 3HR

Phone  +44 20 8866 3847
Fax    +44 20 8866 4128

Doc-No. 1167569  18/JUN/2008  17:26 (UTC +0100) UP

HARRY/UGO

TO  OWS AND CHARTS CONFIRM HVING FULLY FIXED WITH YR GOODSELVES
WITH ALL SUBJECTS IN ORDER ON THE FOLLOWING BASIS :

ALL NEGOS+EVENTUAL FIXTURE TO BE  KEPT STRICTLY PANDC BSS

CP DD 18TH JUNE 2008

MV IRENE - AS DESCRIBED IN CP 28.4.06

ACCT AGRENCO

-DELY AFSPS RIO GRANDE AIDNSHINC
-L/C 6TH /11TH JULY 2008 (VSL PASSING GIBR 18TH JUNE)
-FOR ONE TCT VIA ECSA TO FEAST
-WITH A CARGO OF BULK GRN/GRN PRODS ONLY INTN SOYABEANS.
 ALLOWED GRAINS TO BE SPECIFIED AS FLWS:
 ''HEAVY GRAIN,SORGHUM,SOYABEANS,MEALS,PELLETS,SEEDS,AGRICULTURE
 PRODUCTS IN BULK (ALWAYS EXCLUDING WHEATBRAN,RICE,BRAN, COPRA,PALM
 KERNELS,SUN FLOWER SEED EXPELLERS,LINSEED EXPELLERS,OILCAKES.''
-REDELY DLOSP SP SPORE/JPN-SKOREA RGE INCL  CHINA/P.I./TAIWAN
 AIDNSHINC INTN DALIAN AIDNSHINC
-HIRE USD 70.000 D INCLOT + 1.450.000 GROSS BB
-B.O.D. ABT 1100 MTS IFO AND ABT 110 MTS MDO
 B.O.R. ABT SAME QTTIES AS ACTUALLY DELIVERED WITH.
 SAME PRICES BENDS - USD 700 PMT IFO AND USD 1300 PMT MDO
-OWISE FURTHER TERMS/COND/CPDETS OF  M.V.  IRENE/INLOGS-AGRENCO
 CP DD 28.4.06  LOGICALLY AMENDED IN ACCORDANCE WITH ABOVE.
-5PC TTL INCL GREYSTONE
END

MANY THANKS

CHARTS TO REVERT WITH AGENTS STYLE AT LOAD/AND NOTICES.

OWS WILL REVERT-RE-CONFIRM TOMORROW REF OWS BANKING DETAILS.

B.RGDS/GREYSTONE

RECEIVED TIME  2. JUL. 16:32

# EXHIBIT 3



AGRENCO ITALIA SPA
VIA NAPOLEONE COLAIANNI, 4 – 00181 ROME (ITALY)

8 July 2008

A. G. Scott
Creek House
39, The Lane
West Mersea
ESSEX CO5 8NS
United Kingdom

N F N 08 JUL 2008  08:31

Christopher Moss
4 Charlotte Place
Wilton Road
London SW1V 1DP
United Kingdom

Holman Fenwick Willan
Marlow House
Lloyds Avenue
London EC3N 3AL
United Kingdom

Dear Sirs,

Global Maritime Investments Ltd -v- Agrenco Italia SpA: m/v "PELAGIA" – charterparty dated 19 October 2007

Please accept the instant and its enclosures as the Respondents' Defence and Counterclaim Submissions in response thereto.

Enclosed with this letter is a paginated bundle of copy documents; references to numbers in square brackets in the course of these submissions are to page numbers in that bundle.

References to paragraph numbers herein are references to the Claimants' letter of claim dated 11 June 2008 ("the letter of claim").

Save insofar as expressly admitted herein, the Respondents take issue with the Claimants in respect of the letter of claim.

# EXHIBIT 4

| Correspondent Bank: | Ordering Customer (Acc.No./Name): |
|---|---|
| CLEARING CR. INTERNET BANKING<br>600 5TH AVENUE 3RD FLOOR<br>NEW YORK, NY 10020 | INLOGS INTERNATIONAL LTD.<br>560 UPPER FLOOR<br>BEATRICE BETTERFIELD BUILDING |

| Details of payment:<br>PYMT ON BEHALF OF AGRENCO MADEIRA<br>RFB?NONE | Amount | USD | 319.540,81 |
|---|---|---|---|

**Additional Information:**
Credit under the reserve that the
respective coverpayment will be
at our free disposal.

| Original currency and amount:<br>USD319540,81 | Total Amount<br>USD | 319.540,81 |
|---|---|---|
| | Value  05.07.07  Account No. | 05-21561-001 |

00

**BERENBERG BANK**

| Correspondent Bank: | Ordering Customer (Acc.No./Name): |
|---|---|
| CLEARING CR. INTERNET BANKING<br>600 5TH AVENUE 3RD FLOOR<br>NEW YORK, NY 10020 | INLOGS INTERNATIONAL LTD.<br>560 UPPER FLOOR<br>BEATRICE BETTERFIELD BUILDING |

| Details of payment:<br>PYMT ON BEHALF OF AGRENCO MADEIRA 2<br>ND PROVISIONAL FINAL HIRE PYMT RFB<br>?NONE | Amount | USD | 211.581,72 |
|---|---|---|---|

Additional Information:
Credit under the reserve that the
respective coverpayment will be
at our free disposal.

| Original currency and amount:<br>USD211581,72 | Total Amount | | |
|---|---|---|---|
| | | USD | 211.581,72 |
| | Value | 19.07.07 Account No. | 05-21561-001 |

🐎 BERENBERG BANK

| | |
|---|---|
| **Correspondent Bank:**<br>CLEARING CR. INTERNET BANKING<br>600 5TH AVENUE 3RD FLOOR<br>NEW YORK, NY 10020 | **Ordering Customer (Acc.No./Name):**<br>INLOGS INTERNATIONAL LTD.<br>560 UPPER FLOOR<br>BEATRICE BETTERFIELD BUILDING |
| **Details of payment:**<br>PAYMENT ON BEHALF OF AGRENCO MADEIR<br>REF MV ALKYON CP DD 160507 RFB?NO<br>NE | **Amount**      **USD**        884.239,73 |
| **Additional Information:**<br>Credit under the reserve that the<br>respective coverpayment will be<br>at our free disposal. | |
| **Original currency and amount:**<br>USD884239,73 | **Total Amount**    **USD**       884.239,73<br>Value   18.06.07   Account No.   05-21561-001 |

00

**BERENBERG BANK**

| Correspondent Bank:<br>CLEARING CR. INTERNET BANKING<br>600 5TH AVENUE 3RD FLOOR<br>NEW YORK, NY 10020 | Ordering Customer (Acc.No./Name):<br><br>INLOGS INTERNATIONAL LTD,<br>560 UPPER FLOOR<br>BEATRICE BETTERFIELD BUILDING | | |
|---|---|---|---|
| Details of payment:<br>PYMT ON BEHALF OF AORENCO MADEIRA F<br>INAL HIRE ALKYON  RFB?NONE | Amount | USD | 47.123,16 |
| Additional Information:<br>Credit under the reserve that the<br>respective coverpayment will be<br>at our free disposal. | | | |
| Original currency and amount:<br>USD47123,16 | Total Amount<br>Value   30.07.07 | USD<br>Account No. | 47.123,16<br>05-21561-001 |

00

### ☙☙ BERENBERG BANK

RECEIVED TIME  18. SEP.  12:30

# EXHIBIT 5

02-JUL-2008 09:47 From:FAFALIOS LTD

0044207696070 Shipbrokers

14th Floor. York House  Empire Way, Wembley, Middlesex HA9 8PA (U.K.)
Tel: 020 8795 5002  Fax: 020 1795 5003
Emails: bandy@greymoonshipping.co.uk
ponorman@greymoonshipping.co.uk

**1st ORIGINAL**

banchero costa & C.s.p.a.

# Time Charter

## GOVERNMENT FORM
### Approved by the New York Produce Exchange
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931, October 3rd, 1946

1 **This Charter Party,** made and concluded in London, 28th................................... day of April 2006........ 19...
2 Between Messrs. OPAL FINANCE LTD OF MONROVIA, LIBERIA as Managers..........................................
3 Owners of the good ................................Steamship/Motorship .m/v "IRENE" for vessel's description see clause 45 ...........................................
4 of.....................tons gross register and................................tons net register, having engines of.............................................indicated horse-power
5 and with hull, machinery and equipment in a thoroughly efficient state, and classed................................................
6 of.....................of about.......................cubic feet bale capacity and about................................tons of 2048 lbs.
7 deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,
8 allowing a minimum of fifty tons) on a draft of................................feet................inches on................................Summer freeboard, inclusive of permanent bunkers,
9 which are of the capacity of about................................tons of fuel, and capable of steaming, fully laden, under good weather
10 conditions about................................knots on a consumption of about................................tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,
11 now vessel off RECALADA awaiting orders................................
12 ................................and Messrs. INLOGS INTERNATIONAL LIMITED, Charterers of the City of ITAJAI, BRAZIL...........

13 **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14 about one time charter trip via East Coast South America to Far East with grain/agricultural products only - Intention bulk soya

15 beans via safeport/s safe berth/s safe anchorage/s always within Institute Warranty Limits, always afloat except NAABSA at
   loading in ECSA only as per NYPE Clause 6. Duration about 55 days to about 75 days without guarantee/weather
   permitting/unforeseen circumstances excluded within below mentioned trading limits.
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfillment of this Charter Party.
18 Vessel to be placed at the disposal of the Charterers, on arrival first sea pilot station SAO FRANCISCO DO SUL, BRAZIL at any time ....
19 day or night, Sundays and Holidays included ................................
20 in each dock or at such wharf or place (where she may safely lie always afloat, at all times of tide, except as otherwise provided in clause No. 6) as
21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be
22 ready to receive cargo with clean swept holds on her arrival at load port and tight, staunch, strong and in every way fitted for the ordinary cargo
23 service, having water ballast, winches and
24 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
25 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
26 dise, including petroleum or its products in proper containers, excluding See Clause 61 .
27 (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
28 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North
29 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
   Mexico, and/or South America................................and/or Europe
30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31 October 31st and May 15th Hudson Bay and all vessels ports, also excluding when out of season, White Sea, Black Sea and the Belize
32 Worldwide trading via safe port(s), safe berth(s), safe anchorage(s), always within Institute Warranty Limits
33 excluding Cuba, Israel, Jordan, Syria, Lebanon, Angola, Cyprus, Iraq, Murmansk, Amazon, Orinoco, Finland, Sweden, ................
34 Alaska, Pacific C.I.S., Kirkenes, Vietnam, North Korea, Haiti, former Yugoslavia - except Slovenia and Croatia permitted,
   Libya, North and South Yemen, Cambodia, Sea of Azov, Great Lakes, Iceland, Iran, Kuwait, Strait of Magellan, Nigeria,
   Spitsbergen war and warlike zones
35 as the Charterers or their Agents shall direct, on the following conditions:
36 1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.
39 2. That the Charterers whilst on hire shall provide and pay for all the fuel except as otherwise agreed, Port Charges, all Pilotages, Agencies, hautage
   for Charterers' business, Commissions,
40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into
41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. Costs of communication, representation, victualling and entertainment for Charterers' account to
   be a Lumpsum of U.S.$ 1,500 per month or pro rata. All other fumigations to be for Charterers account after vessel has been on charter for a
   continuous period
44 of six months or more.
45 Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47 for dunnage, they making good any damage thereto.
48 3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49 board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than................................tons and not more than